1
2
3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7     UNITED STATES OF AMERICA

8                              Plaintiff,

9          v.

10    MULTISTAR INDUSTRIES, INC.,

11                             Defendant.

NO. 2:21-CV-0262-TOR

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE

12
13        BEFORE THE COURT are Defendant's Motion to Dismiss (ECF No. 5)

14   and Defendant's Motion to Strike (ECF No. 19).  These matters were submitted for

15   consideration with telephonic oral argument on January 27, 2022.  David L. Dain

16   appeared on behalf of Plaintiff.  Michael Davidson appeared on behalf of

17   Defendant.  The Court has reviewed the record and files herein, considered the

18   parties' oral arguments, and is fully informed.  For the reasons discussed below,

19   Defendant's Motion to Dismiss (ECF No. 5) is DENIED and Defendant's Motion

20   to Strike (ECF No. 19) is DENIED.

1

## FACTS

2    This matter arises from the transport of a regulated hazardous substances,

3  trimethylamine ("TMA"), via railcar to a transloading facility in Othello,

4  Washington.  The following facts are drawn from Plaintiff's Complaint and

5  construed in the light most favorable to Plaintiff.  *Schwarz v. United States*, 234

6  F.3d 428, 436 (9th Cir. 2000).

7    TMA is shipped by railcar and/or truck to Defendant's facility in Othello,

8  Washington.  ECF No. 1 at 10, ¶¶ 33–34.  After the railcars are delivered to

9  Defendant's facility, the motive power (the engine car) is disconnected from the

10  railcars.  *Id*. at 12, ¶ 44.  Defendant then uses a transloader, its associated transfer

11  hoses, and other related equipment to transfer the TMA to trucks.  *Id*. at ¶ 45.  The

12  TMA is then delivered to third parties.  *Id*.  Between the arrival at Defendant's

13  facility and the subsequent delivery to third parties, the railcars are stored for at

14  least some time at Defendant's facility and are not under active shipping papers.

15  *Id*. at 13, ¶¶ 48, 50.

16    Plaintiff Environmental Protection Agency ("EPA") alleges Defendant is

17  subject to the Clean Air Act ("CAA") and the Emergency Planning and

18  Community Right-to-Know Act ("EPCRA"), and their accompanying regulations,

19  due to the nature and quantities of the TMA present at Defendant's facility, and the

20  manner in which the TMA is stored before delivery.  *Id*. at 12–16, ¶¶ 43–65.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE ~ 2

Plaintiff further alleges Defendant violated the regulations by failing to develop

and implement a risk management program. *Id*. at 16–31, ¶¶ 66–114.

Additionally, Defendant violated the EPCRA by failing to prepare and maintain

annually a safety date sheet and an emergency and hazardous chemical inventory

sheet, which are to be delivered to the appropriate local emergency response

entities. *Id*. at 31–33, ¶¶ 115–125.

Defendant denies the transloading of the TMA is subject to CAA and

EPCRA oversight because the TMA is not stored in a manner that would trigger

the regulations. ECF No. 5 at 7, ¶ 11. Defendant further denies it owns the

railcars, claiming the railcars and TMA are owned by a third-party shipper. *Id*. at

2–3, ¶ 4. Defendant moves for dismissal of the Complaint on the grounds that

Plaintiff's claims fail as a matter of law. ECF No. 5.

## DISCUSSION

### I.    Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) "tests the

legal sufficiency" of the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732

(9th Cir. 2001); Fed. R. Civ. P. 12(b)(6). To withstand dismissal, a complaint must

contain "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This requires the plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. While a plaintiff need not establish a probability of success on the merits, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

When analyzing whether a claim has been stated, the Court may consider the "complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" however "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted).

In assessing whether Rule 8(a)(2) has been satisfied, a court must first identify the elements of the plaintiff's claim(s) and then determine whether those elements could be proven on the facts pled. The court may disregard allegations

1    that are contradicted by matters properly subject to judicial notice or by exhibit.

2    *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The court

3    may also disregard conclusory allegations and arguments which are not supported

4    by reasonable deductions and inferences.  *Id*.  A claim may be dismissed only if "it

5    appears beyond doubt that the plaintiff can prove no set of facts in support of his

6    claim which would entitle him to relief."  *Navarro*, 250 F.3d at 732.

### A. Consideration of Supporting Materials

8         In support of their briefing on the pending motion to dismiss, both sides

9    submitted several supporting exhibits.  ECF Nos. 5-1–5-6, 8, 8-1, 11-1, 15-1–15-5.

10   Defendant develops no argument as to why the Court should consider their

11   supporting exhibits at this stage in the proceeding.  Plaintiff's supporting materials

12   appear to be offered only as response to Defendant's materials.

13        "Review [of a motion to dismiss] is limited to the complaint."  *Cervantes v.*

14   *City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).  "Generally, district courts

15   may not consider material outside the pleadings when assessing" a Rule 12(b)(6)

16   motion.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

17   "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers

18   evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a

19   Rule 56 motion for summary judgment, and it must give the nonmoving party an

20   opportunity to respond."  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.

2003).

However, in considering a motion to dismiss, the Court may consider the "complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv.*, 540 F.3d at 1061 (*citing Tellabs*, 551 U.S. at 322). The Court may take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). This includes "records and reports of administrative bodies." *Ritchie*, 342 F.3d at 909 (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)).

While the Court has discretion to take notice of certain materials, "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja*, 899 F.3d at 998. "Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint." *Id.* at 1003.

Here, Defendant submits one document that appears subject to judicial notice, which appears to be a "frequently asked questions" page from the EPA's website. ECF No. 5-2. The document is readily accessible by the public via the agency's website. Accordingly, the information contained in the document is

subject to judicial notice.  As to Defendant's remaining documents, they seem to

be offered generally to challenge Plaintiff's factual allegations.  Similarly,

Plaintiff's single document submitted with its responsive pleading appears to be

offered solely to dispute Defendant's challenges.  ECF No. 11-1.  Consideration of

these documents would take the Court's evaluation of the motion to dismiss away

from the face of the Complaint and would conflict with the Court's obligation at

this stage to construe Plaintiff's factual allegations in the light most favorable to

Plaintiff.  *Cervantes*, 5 F.3d at 1274; *Lee*, 250 F.3d at 688.  Accordingly, the Court

declines to take judicial notice or consideration of the remaining supporting

exhibits at this stage in the proceedings.

### B. Motion to Strike

After Defendant filed its Reply, Plaintiff filed a document styled as

"Document Submitted Under Seal Re Motion to Dismiss."  ECF No. 17.  Plaintiff

offers no legal or procedural basis for submitting the document.  Defendant moves

to strike the document on the grounds that it is improperly filed, untimely, and

prejudicial. ECF No. 19.  Additionally, Defendant has filed its own supplemental

responsive documents.  Defendant also does not present a legal or procedural basis

for the documents but instead claims "[D]efendant has no option but to address the

errors and fallacies" in Plaintiff's supplemental filing.  ECF No. 19 at 3.

Generally, under this Court's scheduling orders, no supplemental response

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE ~ 7

or supplemental replies to any motion may be filed unless the Court grants a

motion to file such documents.  However, no scheduling order has been issued in

this case.  The Court reminds the parties to review Local Civil Rule 7, which

provides for one response memorandum for each motion.

The Court finds it unnecessary to strike either party's supplemental filings

because the Court's review of the motion to dismiss is limited to the Complaint,

documents incorporated into the Complaint by reference, and judicial notice.

*Metzler Inv. GMBH*, 540 F.3d at 1061.  To the extent either party raises new

allegations in their supplemental filings, the material is not dispositive to the

current Order.  The Court denies Defendant's Motion to Strike.

## C. Clean Air Act and Emergency Planning and Community Right-to-Know Act

The CAA, 42 U.S.C. § 7412(r), imposes a duty on owners and operators of

stationary sources that store more than a threshold quantity of a regulated

substance to identify hazards that might result from release of the substance and to

take steps to mitigate the accidental release of the regulated substance.  42 U.S.C. §

7412(r).  The EPRCA, 42 U.S.C. § 11047, also imposes a duty on owners and

operators of facilities that handle hazardous materials to prepare and submit

inventory forms that report the type and quantity of certain hazardous materials in

order to aid local emergency response entities in the event of a hazardous material

release.  42 U.S.C. § 11047.  Explicitly exempt from regulation are hazardous substances that are stored incident to transportation.  42 U.S.C. § 11047; 40 C.F.R. § 68.3.

Defendant argues Plaintiff's claims fail as a matter of law because the TMA is not stored in stationary sources as defined by the regulations, and because Defendant does not own or operate the railcars that Plaintiff alleges are used as stationary sources under the regulations.   ECF No. 5 at 7, ¶¶ 11–12.

1.  "*Stationary Source*"

The regulations implementing the CAA define "stationary sources" as:

> [A]ny buildings, structures, equipment, installations, or substance emitting stationary activities which belong to the same industrial group, which are located on one or more contiguous properties, which are under the control of the same person (or persons under common control), and from which an accidental release may occur. . . .  A stationary source includes transportation containers used for storage not incident to transportation and transportation containers connected to equipment at a stationary source for loading or unloading.

40 C.F.R. § 68.3.  The regulations carve out an exception for containers used as storage incident to transportation.  *Id*.  In other words, a container used to transport regulated materials will not be subject to the EPA regulations so long as the container is still considered to be in transportation, even if that container is incidentally used as a storage container during the transportation process.  The regulations do not define what constitutes storage incident to transportation.

The Complaint alleges the railcars carrying TMA fall within the definition of

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE ~ 9

1   "stationary sources" for "at least some time" while at Defendant's transloading

2   facility.   ECF No. 1 at 13, ¶¶ 48–49 (quoting 49 C.F.R. § 68.3).  Plaintiff alleges

3   the railcars convert to stationary sources once they are disconnected from their

4   motive power.  *Id*. at 12, ¶ 44.  The Complaint does not indicate how long the

5   railcars remain stationary sources, and Plaintiff has indicated it was unable to

6   provide such information because Defendant has claimed all documents relating to

7   TMA are confidential business information.  ECF No. 11 at 7 n.3.

8          Defendant argues the railcars are not stationary sources but are used as

9   "storage incident to transportation," which is exempt from the regulations.  ECF

10  No. 5 at 3–4, ¶¶ 6–7.  In support of its argument, Defendant relies on the

11  Department of Transportation ("DOT") regulations regarding the transport of

12  hazardous materials, which defines "storage incidental to movement" as "[s]torage

13  at the destination shown on a shipping document, including storage at a

14  transloading facility, provided the original shipping documentation identifies the

15  shipment as a through-shipment and identifies the final destination or destinations

16  of the hazardous material."  *Id*. at 6, ¶ 9 (citing 49 C.F.R. § 171.1(c)(4)(i)(A)).

17  Defendant asserts the railcars containing TMA are temporarily staged on the rail

18  tracks until the TMA is transloaded to a cargo tank motor vehicle for transportation

19  to the final destination listed on shipping papers.  *Id*. at 3, ¶ 4.  Defendant does not

20  indicate how long the railcars are "temporarily staged" before being transloaded.

1  Defendant further argues the railcars cannot be considered stationary sources

2  because the TMA in the railcars is subject to active shipping papers at all times.

3  *Id*. at 22, ¶ 43.

4       Notably, the EPA attempted to address the issues raised by Defendant in

5  1998 when it amended certain aspects of its regulatory scheme for hazardous

6  substances.  *See* List of Regulated Substances and Thresholds for Accidental

7  Release Prevention; Amendments, 63 Fed. Reg. 640-01, 642–43 (Jan. 6, 1998).  To

8  clarify confusion and overlap between the DOT and EPA regulations that cover

9  transport and storage of hazardous materials, the EPA, in consultation with DOT,

10  amended the definition of "stationary sources" under the CAA.  *See id*.  In its

11  assessment of the definition, the EPA specifically stated that it believed railroad

12  tank cars could be considered stationary sources if they remained at one location

13  "for a long period of time."  *Id*. at 643.  The EPA did not elaborate on what it

14  considered a "long period of time."  Conversely, the EPA noted a container would

15  be considered in transportation "so long as it is attached to the motive power that

16  delivered it to the site."  *Id*.

17       The EPA also addressed the consideration of shipping papers when

18  assessing whether a container was a stationary source.  The EPA found that

19  shipping papers were an unsuitable criterion in the determination of what

20  constituted stationary sources because shipping papers were not always generated

1    and were not required under DOT regulations.  *Id*.  Consequently, the EPA

2    removed references to shipping papers from the definition of stationary sources.

3    *Id*.  Defendant's argument that the presence of shipping papers is, thus, not

4    dispositive to the issue of whether the railcars are stationary sources.

5        The Court finds Plaintiff's allegations that the railcars are stationary sources

6    for at least sometime while at Defendant's transloading facility are at least

7    plausible on their face.  Whether the railcars are, in fact, stationary sources subject

8    to EPA regulation is an issue better resolved on a motion for summary judgment or

9    at trial.

10           2.    *"Owner or operator"*

11        Defendant argues it is not subject to the CAA and EPCRA because it is not

12    the owner or operator of the railcars used to transport the TMA.  ECF No. 5 at 7, ¶

13    12.  Under the CAA, an "owner or operator" is defined as "any person who owns,

14    leases, operates, controls, or supervises a stationary source."  42 U.S.C. §

15    7412(a)(9); 40 C.F.R. § 68.3.  Similarly, the EPCRA applies to owners or operators

16    of facilities that store threshold levels of hazardous materials.  40 C.F.R. § 370.66.

17    Clearly the definitions contemplate persons other than merely owners and

18    operators; they also incorporate those who supervise or control stationary sources.

19    Thus, if the railcars are, in fact, stationary sources for at least some time while at

20    Defendant's facility, logically, the railcars would be under Defendant's supervision

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE ~ 12

and control, which would trigger Defendant's duties under the CAA and EPCRA. Because the Court finds Plaintiff has sufficiently alleged plausible facts regarding the use of the railcars as stationary sources, the Court also finds the Complaint alleges sufficient facts regarding Defendant's control and supervision of the railcars while they are stored at Defendant's facility. The determination of whether Defendant is, in fact, an owner or operator as defined by the regulations is better evaluated on a motion for summary judgment or at trial.

The Court concludes Plaintiff's claims presently survive dismissal, as the pleadings allege sufficient facts that could plausibly lead to the relief Plaintiff seeks.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendant's Motion to Dismiss (ECF No. 5) is DENIED.

2.  Defendant's Motion to Strike (ECF No. 19) is DENIED.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED January 27, 2022.



THOMAS O. RICE
United States District Judge

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND
DENYING DEFENDANT'S MOTION TO STRIKE ~ 13