UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MULTISTAR INDUSTRIES, INC.,<br><br>Defendant. | NO. 2:21-CV-0262-TOR<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT are Defendant's Motion for Summary Judgment (ECF No. 36) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 50). These matters were submitted for consideration with oral argument on February 1, 2023. Michael B. Gillett appeared on behalf of Defendant. Andrene E. Dabaghi and Katherine L. Matthews appeared on behalf of Plaintiff. The Court has reviewed the record and files herein, considered the parties' oral arguments, and is fully informed. For the reasons discussed below, Defendant's Motion for Summary Judgment (ECF No. 36) is DENIED and Plaintiff's Motion for Partial Summary Judgment (ECF No. 50) is GRANTED.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

**BACKGROUND**

This matter relates to the transport of a regulated hazardous substances, trimethylamine ("TMA"), via railcar from Pace, Florida to a transloading facility in Othello, Washington. The following facts are not in dispute except where noted.

Defendant operates an intermodal transfer facility in Othello, Washington. ECF No. 36 at 3, ¶ 2. Defendant's facility has the capacity to receive and store up to 10 rail cars on its private rail siding. ECF No. 44 at 2, ¶ 4. The facility also has transloading equipment that is used to transfer materials from rail cars into cargo tank motor vehicles. *Id*. at 3, ¶ 6. In this case, Defendant's private rails and transloading equipment are used to receive rail cars containing TMA that are shipped from third-party Eastman Chemical Company ("Eastman"), which is a TMA manufacturer located in Pace, Florida. ECF No. 36 at 3, ¶ 2. Eastman uses Defendant's facility because it enables Eastman to store 400,000 pounds or more of TMA, which can be delivered within a few days to Eastman's customer in Moses Lake, Washington. ECF No. 44 at 2, ¶ 4.

The Moses Lake customer used to receive its TMA shipments directly from Eastman via truck. ECF. No 50-1 at 2, ¶ 3. However, in September 2017, Eastman and Defendant entered a "Warehousing Services Agreement" under which Defendant agreed to receive, on behalf of Eastman's Moses Lake customer, the rail cars containing TMA. *Id*. at 2, ¶ 2; 44 at 1–2, ¶¶ 2–3. When Eastman ships

1   the rail cars containing TMA to Defendant, Eastman issues a bill of landing that
2   identifies Defendant as the consignee. *Id*. at 7, ¶¶ 25–26.  Once the rail cars are
3   delivered to Defendant's location, they are disconnected from their motive power
4   source. *Id*. at 4, ¶ 13.  Defendant then takes "operational control of the railcar" and
5   "accepts care, custody and control of the railcars and product contained therein
6   regardless of the unloading date or date of the warehouse receipt." *Id*. at 4, ¶ 12.
7   The rail cars containing TMA remain at Defendant's location until Eastman
8   notifies Defendant, via a subsequent bill of landing, that the Moses Lake customer
9   is ready to take delivery of the TMA.  ECF Nos. 44 at 2, ¶ 3; 50-1 at 7, ¶ 27.
10  Defendant then transloads the TMA from the rail cars into the cargo trucks, which
11  are driven to the Moses Lake customer.  ECF No. 44 at 3, ¶ 6; at 4, ¶ 8.  Each
12  cargo truck can carry nearly 40,000 pounds of TMA.  ECF No. 50-1 at 5, ¶ 19.  At
13  oral argument, Defendant indicated it takes multiple trips to deliver the complete
14  TMA order to the Moses Lake customer.
15      During the time the rail cars containing TMA are located at Defendant's
16  facility, Defendant charges Eastman a "railcar storage fee," also referred to as a
17  "railcar terminal fee." *Id*. at 3–4, ¶¶ 10–11.  Each rail car has the capacity to hold
18  150,000 to 158,000 pounds of TMA, and Defendant's rail siding can hold at least
19  10 rail cars at a time. ECF No. 44 at 2, ¶ 4.  Historically, the TMA has remained in
20

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 3

1  the rail cars at Defendant's location anywhere from 6 days to 26 weeks.  ECF No.
2  50-1 at 4, ¶ 16.
3       On September 1, 2021, Plaintiff filed a Complaint seeking injunctive relief
4  and civil penalties for Defendant's alleged violations of the Clean Air Act, 42
5  U.S.C. § 7412(r)(7), and the Emergency Planning and Community Right-to-Know
6  Act, 42 U.S.C. § 11022.  ECF No. 1.  Defendant moved to dismiss the claims, but
7  the motion was denied on January 27, 2022.  ECF No. 22.  The present motions
8  before the Court are essentially cross motions for summary judgment on
9  Defendant's liability.  ECF Nos. 36, 50.

## DISCUSSION

### I. Legal Standard

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v.*

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

1  *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Defendant moves for summary judgment, arguing the EPA reporting requirements do not apply to its TMA operation because the rail cars are not stationary sources under the CAA nor are they facilities under EPCRA. ECF No. 36. Plaintiff moves for partial summary judgment on Claims 1, 2, and 5 under the CAA and Claims 6 and 7 under EPCRA on the grounds that Defendant failed to comply with the regulatory reporting requirements. ECF No. 50.

**A. Clean Air Act (CAA)**

The CAA, 42 U.S.C. § 7412(r)(7), and its implementing regulations at 40

C.F.R. Part 68, impose a duty on owners and operators of stationary sources that store more than a threshold quantity of a regulated substance to identify hazards that might result from release of the substance and to take steps to mitigate the accidental release of the regulated substance.  Explicitly exempt from regulation are hazardous substances that are stored incident to transportation.  42 U.S.C. § 11047; 40 C.F.R. § 68.3.  Defendant argues the transportation exemption applies to its TMA operation.  ECF No. 36.

Under the CAA transportation exemption, a container used to transport regulated materials is not subject to EPA regulation so long as the container is still considered to be in transportation, even if the container is used as "storage incident to transportation."  40 C.F.R. § 68.3.  The regulations do not define what constitutes "storage incident to transportation" and the parties dispute how this language should be interpreted.  Defendant contends storage is incidental to transportation when storage is subordinate to the principal purpose of transporting the material to the end customer.  ECF No. 36 at 15.

In the context of Defendant's TMA operation, Defendant argues transporting the TMA is the primary function of its operation; any storage is subordinate to the transport.  *Id*. at 13.  Defendant asserts it simply acts as an intermediary between Eastman and Eastman's Moses Lake customer, and storage of the TMA occurs as part of the transportation process.  *Id*.  To illustrate, the TMA shipment originates

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 6

1  with Eastman, who sends the TMA via railcar to Defendant's Othello location. *Id*.

2  at 3, ¶ 2. Eastman sends the TMA to Defendant's location because the Moses Lake

3  customer does not have private rail sidings to receive the shipments. *Id*. Eastman

4  then notifies Defendant when the Moses Lake customer is ready to take delivery of

5  the TMA. *Id*. at ¶ 3. Thereafter, Defendant transloads the TMA from the rail cars

6  into a cargo tank motor vehicle for transport to the Moses Lake customer. *Id*. at 4–

7  5, ¶¶ 4–6. Defendant does not indicate how long the TMA sits in the rail cars on

8  Defendant's rails before it is delivered to the Moses Lake customer.

9        Plaintiff does not disagree with Defendant's definition of "storage incident

10 to transportation;" rather, Plaintiff contends Defendant's storage of TMA is not

11 subordinate to its transportation—storage of TMA is a primary function of

12 Defendant's operation, and therefore, the transportation exemption does not apply.

13 ECF No. 50 at 14. Specifically, Plaintiff argues Defendant is subject to the CAA

14 reporting requirements due to the length of time the TMA sits in the rail cars

15 before being sent to the Moses Lake customer. To support its position, Plaintiff

16 first points to Defendant's "Warehousing Services Agreement" with Eastman in

17 which Defendant agrees to takes operational control of the rail cars upon delivery

18 at Defendant's location and is paid a "railcar storage fee" or "railcar terminal fee"

19 for each day the TMA rail cars sit on Defendant's rails. ECF No. 38-1 at 6–7, ¶ 9.

20 Because Defendant acts as a "warehouseman" for Eastman, storage is not

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 7

incidental to Defendant's transport of the TMA but a primary function of the operation. ECF No. 38 at 14. Further, since 2018, rails cars containing TMA have sat on Defendant's rails between 6 days and 26 weeks. *Id*. at 3. Finally, at no point during these timeframes are the rail cars connected to a motive power. ECF *Id*. at 16. Of these facts, Defendant only disputes that storage is the "express purpose" of the Warehousing Agreement. ECF No. 52 at 4, ¶ 2. Defendant does not dispute that storage is contemplated by the Agreement. *Id*.

Based on the uncontroverted facts and a plain reading of the regulations, the rail cars containing TMA are used as storage outside the scope transportation. It is undisputed the TMA-containing rail cars sit for days or weeks before the TMA is eventually transloaded into trucks for transfer to the Moses Lake customer. The EPA contemplated precisely this type of scenario when addressing the definition of stationary sources. *See* List of Regulated Substances and Thresholds for Accidental Release Prevention; Amendments, 63 Fed. Reg. 640-01, 642–43 (Jan. 6, 1998) (stating a rail car could be considered a stationary source if it remained at one location for a long period of time). Defendant's attempt to compare its rail car storage to a gas pipeline operation is unavailing. *See* ECF No. 36 at 16 (discussing *Exxon Corp. v. Sec'y of Transp*., 978 F. Supp. 946 (E.D. Wash. 1997)). The Hazardous Liquid Pipeline Safety Act (HLPSA) is unrelated to the CAA regulations and it is an unnecessary comparator because the plain language of the

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

1  CAA is unambiguous in the context of the present case.  No reasonable fact finder
2  could conclude the rail cars at issue are stored incident to transportation when they
3  sit for extended periods of time on Defendant's rails while completely
4  disconnected from any mode of power.  Accordingly, the CAA transportation
5  exemption does not apply to Defendant's operation and Defendant is not entitled to
6  summary judgment on its liability arising under the CAA.
7       Turning to Plaintiff's motion for summary judgment on the same issue,
8  Plaintiff notes its motion is limited to the applicability of the CAA to the TMA
9  contained in the rail cars stored at Defendant's location.  ECF No. 50 at 11.  The
10 parties do not dispute there is more than a threshold quantity of TMA present in the
11 rail cars while they are stored at Defendant's location, and that there is a possibility
12 the TMA could release into the community.  ECF No. 54 at 2.  The parties also do
13 not dispute that if Defendant's TMA operation is subject to the CAA regulations,
14 Defendant failed to comply with the Risk Management Program requirements.
15 ECF No. 50 at 19–21.  Defendant argues the rail cars are not stationary sources for
16 the purposes of the CAA, and that it is not the owner or operator of the rail cars
17 while they remain at Defendant's location; therefore, Defendant is not subject to
18 the CAA.  ECF No. 53 at 3–4.
19      As an initial matter, the Court has already determined there is no genuine
20 dispute that the rail cars are stationary sources for the purposes of the CAA where

they remain unmoving and disconnected from a power source at Defendant's location for days and weeks at a time. As to whether Defendant is the owner or operator of the rail cars while they are stored at Defendant's facility, the regulations define an owner or operator as "any person who owns, leases, operates, controls, or supervises a stationary source." 40 C.F.R. § 68.3. Pursuant to the Warehousing Services Agreement, Defendant agrees to "accept[] care, custody and control of the railcars and product contained therein regardless of the unloading date or date of warehouse receipt." ECF No. 50 at 12. Moreover, once the rail cars are delivered to Defendant, only Defendant's personnel supervise or monitor the rail cars. *Id*. Defendant does not dispute these facts. Accordingly, there is no genuine dispute that, under the regulations, Defendant is the owner or operator of the rail cars while they are stored at Defendant's location.

Viewing the facts in a light most favorable to Defendant, there is no genuine dispute that Defendant's TMA operation is subject to the CAA and its implementing regulations, and that Defendant failed to comply with the Risk Management Program requirements. Therefore, Plaintiff is entitled to summary judgment on Claims 1, 2, and 5.

    **B. Emergency Planning and Community Right-to-Know Act (EPCRA)**

Section 312 of EPCRA, 42 U.S.C. § 11022, and its implementing

regulations at 40 C.F.R. Part 370, impose a duty on owners and operators of facilities that handle hazardous materials to prepare and submit inventory forms that report the type and quantity of certain hazardous materials in order to aid local emergency response entities in the event of a hazardous material release. Like the CAA, EPCRA carves out an exception for hazardous material that remains in transportation. 42 U.S.C. § 11047.

Defendant moves for summary judgment on its liability under EPCRA § 312 on the grounds that its rail cars and cargo trucks are not facilities covered by the statute; the amount of TMA contained in the transloaders is below the threshold reporting requirement; and the TMA is exempt under the transportation exemption. ECF No. 36 at 8. Plaintiff also moves for summary judgment on Defendant's liability under § 312 because Defendant failed to comply with the reporting requirements; Defendant's TMA operation is a covered facility containing more than threshold quantities; and the transportation exemption does not apply. ECF No. 50 at 22.

EPCRA defines a "facility" as:

> all buildings, equipment, structures, and other stationary items which are located on a single site or on contiguous or adjacent sites and which are owned or operated by the same person (or by any person which controls, is controlled by, or under common control with, such person). For purposes of section 11004 of this title, the term includes motor vehicles, rolling stock, and aircraft.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 11

1   42 U.S.C. § 11049(4).  Defendant focuses on the final sentence of the definition to

2   argue its TMA operation is not a covered facility because the rail cars are "rolling

3   stock."  Under Defendant's theory, because Congress specifically identifies "motor

4   vehicles, rolling stock, and aircraft" for purposes of § 304 in its "facility"

5   definition, it necessarily excludes those items for the purposes of § 312.  The Court

6   is not persuaded by Defendant's reading of the statute.  As previously discussed,

7   the rail cars containing TMA sit at Defendant's location for days, weeks, and

8   months at a time, disconnected from any motive power.  They are stationary

9   storage units when used in this manner.  The rail cars, therefore, come under the

10  "other stationary items" category of the EPCRA "facility" definition.  Whether

11  Defendant's cargo trucks are included in the "facility" definition is irrelevant to the

12  determination of Defendant's liability under EPCRA § 312—the issue is the length

13  of time the TMA is stored in the unmoving rail cars.

14      Turning to Defendant's argument regarding the threshold levels of TMA,

15  Defendant's argument that its transloaders do not contain threshold levels is a red

16  herring—the rail cars are the storage units at issue, not the transloaders.  Having

17  determined the rail cars are stationary sources, and therefore, covered facilities, the

18  pertinent inquiry is whether the rail cars contain threshold levels of TMA while

19  being stored at Defendant's location.  The undisputed facts indicate Defendant's

20  TMA levels far exceed the 10,000-pound threshold level.  *See* 40 C.F.R. §

370.10(a)(2)(i).  Defendant does not dispute that its rail sidings can hold at least 10 rail cars and each rail car holds between 150,000 and 158,000 pounds of TMA. ECF No. 44 at 2, ¶ 4.  Moreover, Defendant conceded at oral argument that when it transloads the TMA from the rail cars to the cargo trucks, it takes four deliveries of nearly 40,000 pounds to deliver all of the TMA to the Moses Lake customer. Taken together, it is undisputed that Defendant's TMA operation far exceeds the 10,000-pound threshold.

      Finally, Defendant argues the TMA is exempt from regulation because the EPCRA transportation exemption applies.  As with the CAA, hazardous materials that are in transportation or stored incident to transportation are exempt from regulation under EPCRA.  42 U.S.C. § 11047.  To show the TMA remains in transportation, Defendant asserts a bill of landing governs the TMA from the time Eastman ships the TMA until it is delivered to the Moses Lake customer.  ECF No. 36 at 11–12.  Plaintiff argues there are separate billing papers that cover the TMA between its shipment from Eastman to Defendant's location, and from Defendant's location to the Moses Lake customer; there are no active shipping papers while the TMA is stored in rail cars at Defendant's location before delivery to the Moses Lake customer.  ECF No. 38 at 4.

      Plaintiff submits two of Defendant's bills of landing to support its contention.  The first is dated May 18, 2021 and identifies Eastman as the billing

1  party and Defendant as the consignee. ECF No. 38-6. The second is dated

2  October 4, 2021 and identifies Eastman as the billing party and the Moses Lake

3  customer as the consignee. ECF No. 38-7. Although this second bill of landing

4  states the delivery is part of a "through-shipment" originating in Pace, Florida, the

5  "through-shipment" language is notably absent from the first bill of landing.

6  Defendant disputes these facts only to the extent they imply Defendant's location

7  is the final destination of the TMA; Defendant does not dispute that its facility is

8  the final destination of the rail cars. ECF No. 52 at 12, ¶ 22.

9       Therefore, it is undisputed that the first bill of landing, which covers the rail

10  cars containing TMA, expires upon delivery to Defendant's location, and the new

11  bill of landing covers only the TMA that is transloaded and shipped to the Moses

12  Lake customer from Defendant's location. Consequently, there are no active

13  shipping papers that cover the rails cars containing the TMA while the rail cars are

14  stored at Defendant's location. Viewing this evidence in a light most favorable to

15  Defendant, no reasonable fact finder could conclude the TMA is always under

16  active shipping papers, and therefore, always in transportation. Defendant is not

17  entitled to summary judgment on its liability under EPCRA.

18       Plaintiff also moves for summary judgment on Defendant's liability under

19  EPCRA. ECF No. 50. Plaintiff argues it is undisputed that Defendant violated the

20  reporting requirements for the TMA during 2017 and 2018. *Id*. at 21–22.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 14

Defendant only disputes that the TMA stored in the rail cars is subject to the EPCRA reporting requirements because the rail cars are not a "facility."  ECF No. 53 at 13.  As discussed above, while the rail cars containing TMA sit unmoving on Defendant's rails for weeks and months at a time before the TMA is transloaded and delivered to the Moses Lake customer, the rail cars fall under the "other stationary sources" category in the "facility" definition.  Accordingly, Defendant was required to submit the requisite inventory forms for the TMA stored at its location and it is undisputed that Defendant failed to do so.  Plaintiff is entitled to summary judgment on Claims 6 and 7.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 36) is **DENIED**.

2. Plaintiff's Motion for Partial Summary Judgment (ECF No. 50) is **GRANTED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED February 7, 2023.



THOMAS O. RICE
United States District Judge

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 15