UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MULTISTAR INDUSTRIES, INC.,<br><br>Defendant. | NO. 2:21-CV-0262-TOR<br><br>ORDER GRANTING INJUNCTION |
|---|---|

Based on consideration of the evidence presented at trial and a weighing of the equitable factors, the Court **GRANTS** the following injunctive relief in this case.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

**I. COMPLIANCE REQUIREMENTS**

1. Defendant Multistar Industries, Inc. shall comply with the Risk Management Program requirements of Clean Air Act ("CAA") Section 112(r)(7), 42 U.S.C. § 7412(r)(7); the regulations promulgated at 40 C.F.R. Part 68; the chemical inventory reporting requirements of Emergency Planning and

ORDER GRANTING INJUNCTION ~ 1

Community Right-to-Know Act ("EPCRA") Section 312, 42 U.S.C. § 11022; and the regulations promulgated at 40 C.F.R. Part 370 with respect to the activity at Defendant's Facility involving more than a threshold quantity of trimethylamine ("TMA") as defined by 40 C.F.R. § 68.115, including any use, storage, handling, distributing, or other on-site movement of such TMA, or combination of these activities (the TMA Covered Process).

2. Risk Management Plan Submissions. Within 60 days after this Order is filed, Defendant shall submit the following to the U.S. Environmental Protection Agency ("EPA") for the TMA Covered Process at its Facility:

a. a complete compilation of process safety information, including information pertaining to the hazards, technology, and equipment involving any TMA Covered Process, in accordance with 40 C.F.R. § 68.65(a);

b. complete written operating procedures that provide clear instructions for safely conducting any TMA Covered Process, in accordance with 40 C.F.R. § 68.69(a);

c. complete written mechanical integrity procedures addressing all process equipment involving any TMA Covered Process, in accordance with 40 C.F.R. § 68.73(a) and (b); and

d. complete inspection and testing records for conducting on-going maintenance on all process equipment involving any TMA Covered Process,

1  in accordance with 40 C.F.R. § 68.73(d). Such inspection and testing procedures

2  shall follow recognized and generally accepted good engineering practices and

3  shall be conducted with such frequency as consistent with manufacturers'

4  recommendations and good engineering practices, or more frequently if

5  determined to be necessary by prior operating experience.

6      3. Defendant shall train each of its employees operating any equipment or

7  any other part of the Facility on both the operating procedures and the mechanical

8  integrity procedures (to be submitted under Paragraph 1), in accordance with 40

9  C.F.R. §§ 68.71(a)(1), 68.71(b) and 68.73(c).

10     4. Approval of Deliverables. After review of any plan, report, or other item

11 that is required to be submitted for approval pursuant to this Order, EPA will in

12 writing:

13         a. approve the submission;

14         b. approve the submission upon specified conditions;

15         c. approve part of the submission and disapprove the remainder; or

16         d. disapprove the submission.

17     EPA shall inform Defendant in writing of the specific factual and technical

18 insufficiencies, if any, in the submission.

19     5. If the submission is approved pursuant to Paragraph 4.a., Defendant shall

20 take all actions required by the plan, report, or other document, in accordance with

ORDER GRANTING INJUNCTION ~ 3

the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to Paragraph 4.b. or c., Defendant shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions.

6. If the submission is disapproved in whole or in part pursuant to Paragraph 4.c. or d., Defendant shall, within 45 days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

7. If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs.

8. If Defendant elects to invoke Dispute Resolution as set forth in Section V (Dispute Resolution) concerning a decision by EPA to disapprove, approve on specified conditions, or modify a deliverable, Defendant shall do so by sending a Notice of Dispute in accordance with Paragraph 34 within 30-days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

9. Any predetermined penalties applicable to the original submission, as provided in Section III, accrue during the 45-day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Order, the predetermined penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

10. Permits. Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendant may seek relief under the provisions of Section IV (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## II.  REPORTING REQUIREMENTS

11. By July 31st and January 31st of each year after the entry of this Order, for the next five (5) years, Defendant shall submit electronically (followed by a mailed copy) a semi-annual report for the preceding six months (January 1 to June

30 or July 1 to December 31) to EPA and the U.S. Department of Justice (DOJ) that identifies any non-compliance with the Order, including but not limited to Paragraphs 1 - 3, an explanation of the likely cause of and remedial steps taken or to be taken to address non-compliance, and includes or is accompanied by:

      a. Any certified compliance audits conducted during the reporting period of the TMA Covered Process under 40 C.F.R. §§ 68.58 or 68.79 (as applicable), along with documentation of steps taken to determine and document an appropriate response to each of the findings of the compliance audit and documentation that all deficiencies identified in the compliance audit have been corrected.

      b. Any revisions to or new operating procedures implemented during the reporting period to meet the requirements of 40 C.F.R. §§ 68.52 or 68.69 (as applicable) for the TMA Covered Process.

      c. Any revisions to or new maintenance or inspection procedures implemented during the reporting period pursuant to 40 C.F.R. §§ 68.56 or 68.73 for the TMA Covered Process.

      d. Records of training conducted during the reporting period to meet the requirements of 40 C.F.R. §§ 68.54, 68.56(b), 68.71, or 68.73(c) for the TMA Covered Process.

e. A description of any "major changes" (as defined in 40 C.F.R. § 68.3) to the TMA Covered Process, changes that triggered implementation of Defendant's management of change procedures, or the addition of new covered processes at the Facility during the reporting period pursuant to 40 C.F.R. §§ 68.48(c), 68.50(d), 68.52(c), 68.54(d), 68.75, or 68.77.

f. Inspection, testing, and maintenance records for any process equipment involving any TMA Covered Process at the Facility, including hoses, piping, valves, compressors, scrubber tank and relief valves (but excluding daily inspection records).

12. Whenever any violation of this Order or any other event affecting Defendant's performance under this Order may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA by email as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

13. Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the

ORDER GRANTING INJUNCTION ~ 7

information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

14. This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

15. The reporting requirements of this Order do not relieve Defendant of any reporting obligations required by the Clean Air Act or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

16. Any information provided pursuant to this Order may be used by the United States in any proceeding to enforce the provisions of this Order and as otherwise permitted by law.

### III. PREDETERMINED PENALTIES

17. Defendant shall be liable for predetermined penalties to the United States for violations of this Order as specified below, unless excused under Section IV (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Order according to all applicable requirements of this Order and within the specified time schedules established by or approved under this Order.

ORDER GRANTING INJUNCTION ~ 8

18. Paragraphs 1, 2 and 3.  The following predetermined penalties shall accrue per violation per day for each violation of a requirement of Paragraphs 1, 2 or 3:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $400 | 1st through 30th Day |
| $800 | 31st Day and beyond |

19. <u>Reporting Requirements</u>.   The following predetermined penalties shall accrue per violation per day for each violation of the reporting requirements of Section II:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 30th Day |
| $500 | 31st Day and beyond |

20. <u>Other Violations</u>.  The following predetermined penalties shall accrue per violation per day for each other violation of this Order not specified in Paragraphs 18–19 above:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 30th Day |
| $500 | 31st Day and beyond |

ORDER GRANTING INJUNCTION ~ 9

21. Predetermined penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Predetermined penalties shall accrue simultaneously for separate violations of this Order.

22. Defendant shall pay any predetermined penalty within 30 days of receiving the United States' written demand.

23. The United States may in the unreviewable exercise of its discretion, reduce or waive predetermined penalties otherwise due it under this Order.

24. Predetermined penalties shall continue to accrue as provided in Paragraph 21 above, during any Dispute Resolution, but need not be paid until the following:

    a. If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendant shall pay the amount agreed upon by the Parties, or the amount determined by EPA to be owing, as the case may be, together with interest, to the United States within 30 days of the effective date of the agreement or the receipt of EPA's decision or order.

    b. If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined

ORDER GRANTING INJUNCTION ~ 10

by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as provided in subparagraph c, below.

        c. If any Party appeals the District Court's decision, and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 30 days of receiving the final appellate court decision.

    25. Defendant shall pay predetermined penalties owing to the United States by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Eastern District of Washington.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Order.  The FLU will provide the payment instructions to:

        Cindy Castaneda
        Multistar Industries, Inc.
        101 W. Fir Street
        Othello, WA 99344
        main@multistar-inc.com

on behalf of Defendant.  At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov

or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ via email or regular mail; and (iii) to EPA via email or regular mail. Such notice shall state that the payment is for predetermined penalties owed pursuant to the Order on Injunctive Relief in *United States v. Multistar Industries, Inc.*, Case No. 2:21-cv-0262-TOR, CDCS Number and DOJ case number 90-5-2-1-12000/2.

26. If Defendant fails to pay predetermined penalties according to the terms of this Order, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any predetermined penalties.

27. The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Order.

## IV. FORCE MAJEURE

28. "Force majeure," for purposes of this Order, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Order despite Defendant's best efforts to fulfill the

obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Order or the incapacity or unavailability of any of Defendant's officers, directors, employees, agents, or contractors.

29. If any event occurs or has occurred that may delay the performance of any obligation under this Order, whether or not caused by a force majeure event, Defendant shall provide notice by email to EPA within 72 hours of when Defendant first knew that the event might cause a delay. Within seven days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any

notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

30. If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Order that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

31. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

32. If Defendant elects to invoke the dispute resolution procedures set forth in Section V (Dispute Resolution), it shall do so no later than 30 days after receipt

of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 28–31 above.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Order identified to EPA and the Court.

## V.  DISPUTE RESOLUTION

33.  Unless otherwise expressly provided for in this Order, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Order.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Order.

34.  Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Order shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends DOJ and EPA a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in

1  dispute.  The period of informal negotiations shall not exceed 30 days from the

2  date the dispute arises, unless that period is modified by written agreement.  If the

3  Parties cannot resolve a dispute by informal negotiations, then the position

4  advanced by the United States shall be considered binding unless, within 30 days

5  after the conclusion of the informal negotiation period, Defendant invokes formal

6  dispute resolution procedures as set forth below.

7        35.  Formal Dispute Resolution.  Defendant shall invoke formal dispute

8  resolution procedures, within the time period provided in the preceding Paragraph,

9  by sending DOJ and EPA a written Statement of Position regarding the matter in

10  dispute.  The Statement of Position shall include, but need not be limited to, any

11  factual data, analysis, or opinion supporting Defendant's position and any

12  supporting documentation relied upon by Defendant.

13        36.  The United States shall send Defendant its Statement of Position within

14  45 days of receipt of Defendant's Statement of Position.  The United States'

15  Statement of Position shall include, but need not be limited to, any factual data,

16  analysis, or opinion supporting that position and any supporting documentation

17  relied upon by the United States.  The United States' Statement of Position shall be

18  binding on Defendant, unless Defendant files a motion for judicial review of the

19  dispute in accordance with the following Paragraph.

20

37. Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute. The motion must be filed within 30 days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Order.

38. The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

39. Standard of Review

    a. Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Order, in any dispute brought under Paragraph 35 pertaining to EPA disapproval of the Risk Management Plan Submissions under Paragraph 2, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

    b. Other Disputes. Except as otherwise provided in this Order, in any other dispute brought under Paragraph 35, Defendant shall bear the burden of

demonstrating that its position complies with this Order and better furthers the objectives of the Order.

40. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Order, unless and until final resolution of the dispute so provides. Predetermined penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 24 above.  If Defendant does not prevail on the disputed issue, predetermined penalties shall be assessed and paid as provided in Section III (Predetermined Penalties).

**CONCLUSION**

41   This Injunction is operable for 5-years from today's date.  The Court reserves its right to correct, modify, amend, or cancel this Order Granting Injunction.

**IT IS SO ORDERED.**  The District Court Clerk is directed to enter this Order and provide copies to counsel.

DATED August 1, 2023.



THOMAS O. RICE
United States District Judge

ORDER GRANTING INJUNCTION ~ 18